NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| LEELA KPORLOR, | : | |
| Petitioner, | : | Civil Action No. 12-2755 (DMC) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Respondents. | : | |

---

APPEARANCES:

**LEELA KPORLOR**, Petitioner pro se
A#028-195-610
Essex County Correctional Facility
354 Doremus Avenue
Newark, N.J. 07105

**ANNA NELSON**,
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, D.C. 20044

**CAVANAUGH**, District Judge

　　Leela Kporlor ("Petitioner"), confined at the Essex County Correctional Facility in Newark, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the Department of Homeland Security ("DHS"). Respondents filed an Answer. For the

reasons expressed in this Opinion, this Court holds that

Petitioner's detention is governed by 8 U.S.C. § 1226(a), grants

the Writ of Habeas Corpus, and directs that the Immigration Judge

conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) to

determine if he is a flight risk or danger to the community.

## I. BACKGROUND

Petitioner, a native and citizen of Liberia, was admitted to

the United States as a refugee on December 6, 1993.  (Pet. ¶ 11.)

Petitioner was convicted on February 22, 1996, in the New Jersey

Superior Court for theft by deception in violation of New Jersey

Statute 2C:30-4, and was sentenced to three years' incarceration

for that offense after he violated the terms of his probation.

(Pet., Ex. A, Additional Charges of

Inadmissibility/Deportability.)  Petitioner was then convicted on

March 27, 1998, in the New Jersey Superior Court for possession

of a weapon in violation of New Jersey Statute 2C:39-5D, for

which he was sentenced to eighteen months incarceration.  (Id.)

On that same date, Petitioner was also convicted for possession

of a controlled dangerous substance with intent to distribute

cocaine, in violation of New Jersey Statutes 2C:35-5A and

2C:35-5B, for which he was sentenced to five years incarceration.

(Id.)  Petitioner was released from state custody in 2000.  (Pet.

¶ 28.)

On April 25, 2011, DHS issued a Warrant for Arrest of Alien,

2

which indicated that Petitioner was in the United States in violation of the Immigration and Nationality Act ("INA") and liable to be detained. (Pet., Ex. B, Warrant for Arrest.) The Warrant was served on Petitioner on September 21, 2011, at which time Petitioner was issued a Notice to Appear and taken into DHS custody. (Id.; see also Pet., Ex. A, Notice to Appear.) The Notice to Appear charged Petitioner with three grounds of removability: (1) under 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony illicit trafficking offense; (2) under 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated theft offense; and (3) under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (Pet., Ex. A, Notice to Appear.) On October 3, 2011, DHS filed Additional Charges of Inadmissibility/Deportability, lodging factual allegations in lieu of those listed in the Notice to Appear. (Pet., Ex. A, Additional Charges of Inadmissibility/Deportability.) On September 21, 2011, DHS also issued a Notice Case of Custody Determination, indicating that Petitioner was subject to mandatory detention under the INA. (Pet., Ex. C, Notice of Custody Determination.) Petitioner remains in immigration detention at the Essex County Jail pending the conclusion of his removal proceedings, as an alien subject to mandatory detention

pursuant to 8 U.S.C. § 1226(c).  (Id.)

Petitioner executed the § 2241 Petition presently before
this Court on May 2, 2012.  The Clerk received it on May 8, 2012.
In the Petition, Petitioner argues that he is not subject to
mandatory detention under 8 U.S.C. § 1226(c) because he was
released from incarceration for the crime forming the basis of
his removal, but Respondents did not take him into immigration
custody until eleven years later.  He seeks a Writ of Habeas
Corpus directing Respondents to either release him from custody
or to provide a bond hearing before an Immigration Judge,
pursuant to 8 U.S.C. § 1226(a).

In their Answer, Respondents concede that DHS did not take
Petitioner into custody immediately upon release from his
criminal incarceration for the crime underlying the notice to
appear.  Respondents argue that this Court should defer to the
Board of Immigration Appeals's ("BIA") interpretation of 8 U.S.C.
§ 1226(c) in Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001),
because the "when released" clause in § 1226(c) is ambiguous and
the BIA's interpretation is reasonable.  Respondents contend
that, under the BIA's reading of § 1226(c), "an alien convicted
of an enumerated offense was subject to mandatory detention even
if there was a gap between his release from criminal custody and
entry into DHS custody." (Resp't's Answer 22.)

## II. DISCUSSION

Petitioner argues that he is not subject to mandatory detention under 8 U.S.C. § 1226(c) because DHS did not take him into custody when he was released from his criminal incarceration for the offense forming the basis of his removal, as the statute commands, but waited until 2011 to do so.  The government argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), to the BIA's determination in Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001).  Thus, the question in this case is one of statutory interpretation, i.e., does "when [the alien] is released" mean "when [the alien] is released," or does it mean "any time after [the alien] is released?

### A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).  This Court has subject matter jurisdiction over the Petition under §

2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), and he asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c).  See Zadvydas v. Davis, 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005).

B.  **Relevant Statutes**

The statutory authority to detain an alien depends on where the alien is in the removal process.  Section 1226 governs the pre-removal-period detention of an alien; § 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B); and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision.

Section 1226 states in relevant part:

(a) Arrest, detention, and release
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General-
(1) may continue to detain the arrested alien; and
(2) may release the alien on--
(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
(B) conditional parole; but
(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit),

unless the alien is lawfully admitted for permanent
residence or otherwise would (without regard to
removal       proceedings)      be      provided     such
authorization.
...
(c) Detention of criminal aliens
(1) Custody
The Attorney General shall take into custody any
alien who--
(A) is inadmissible by reason of having committed
any offense covered in section 1182(a)(2) of this
title,
(B) is deportable by reason of having committed any
offense   covered   in   section   1227(a)(2)(A)(ii),
(A)(iii), (B), (C), or (D) of this title,
(C) is deportable under section 1227(a)(2)(A)(i) of
this title on the basis of an offense for which the
alien has been sentence to a term of imprisonment
of at least 1 year, or
(D) is inadmissible under section 1182(a)(3)(B) of
this    title    or    deportable    under    section
1227(a)(4)(B) of this title, when the alien is
released, without regard to whether the alien is
released   on   parole,   supervised   release,   or
probation, and without regard to whether the alien
may be arrested or imprisoned again for the same
offense.
(2) Release
The Attorney General may release an alien described
in paragraph (1) only if the Attorney General
decides pursuant to section 3521 of Title 18 that
release of the alien from custody is necessary to
provide   protection   to   a   witness,   a   potential
witness, a person cooperating with an investigation
into major criminal activity, or an immediate
family member or close associate of a witness,
potential witness, or person cooperating with such
an   investigation,   and   the   alien   satisfies   the
Attorney General that the alien will not pose a
danger   to   the   safety   of   other   persons   or   of
property and is likely to appear for any scheduled
proceeding. A decision relating to such release
shall take place in accordance with a procedure
that   considers   the   severity   of   the   offense
committed by the alien.


Section 1231(a)(2) requires the Attorney General to detain

aliens during the removal period.  See 8 U.S.C. § 1231(a)(2)

("During the removal period, the Attorney General shall detain

the alien").  Under § 1231(a)(1)(B), the removal period begins at

the latest of several events.  Specifically,

> [t]he removal period begins on the latest of
> the following:
> (i)  The date the order of removal becomes
> administratively final.
> (ii)  If the removal order is judicially
> reviewed and if a court orders a stay of the
> removal of the alien, the date of the court's
> final order.
> (iii)  If the alien is detained or confined
> (except under an immigration process), the
> date the alien is released from detention or
> confinement.

8 U.S.C. § 1231(a)(1)(B).

## C. Statutory Authority for Petitioner's Detention

In this case, there is no dispute that Petitioner's removal

period has not begun since his removal order is not

administratively final.  See 8 U.S.C. § 1231(a)(1)(B).

Accordingly, Petitioner's pre-removal-period detention is

necessarily governed by either § 1226(a), which allows the

Immigration Judge to release an alien who is neither a flight

risk nor a danger to the community, or the exception set forth in

§ 1226(c), which prohibits release on bond.  The outcome of the

case depends on the meaning of the following words in §

1226(c)(1): "The Attorney General shall take into custody any

alien [specified in this section], when the alien is released,

8

without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."  8 U.S.C. § 1226(c)(1).  The government argues that this language mandates Petitioner's detention because he was released from incarceration for an offense listed in § 1226(c), even though Petitioner was free in the community for what appears to be approximately a decade.  Specifically, the government argues that this Court is required to defer under Chevron to the BIA's interpretation of § 1226(c) in Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001), because this statutory language is ambiguous and it is reasonable to read "when" to mean "any time after."

## 1.   Matter of Rojas

Matter of Rojas involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1) because the government failed to apprehend him at the time of his release from incarceration on parole for an offense covered by § 1226(c), and instead waited two days before taking him into custody.  See Matter of Rojas, 23 I. & N. Dec. 117.  The BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings.  Id. at 120.  The BIA observed that, under a natural reading of § 1226(c), the "concluding clauses, including the 'when released' clause, address themselves to the statutory

command that the 'Attorney General shall take into custody'
certain categories of aliens, rather than to the description of
those categories." Id. at 121.  The BIA stated that, although
"[t]he statute does direct the Attorney General to take custody
of aliens immediately upon their release from criminal
confinement ... Congress was not simply concerned with detaining
and removing aliens coming directly out of criminal custody; it
was concerned with detaining and removing all criminal aliens."
Id. at 122.  The BIA

> construe[d] the phrasing "an alien described in
> paragraph (1)," as including only those aliens
> described in subparagraphs (A) through (D) of
> section [1226(c)(1) ], and as not including the
> "when released" clause.  Our interpretation is
> derived from the natural meaning of the statutory
> language, from the object and design of the statute
> as a whole, and from the history of the mandatory
> detention provisions. It is reinforced by practical
> concerns that would otherwise arise.

Matter of Rojas, 23 I. & N. Dec. at 125.

The BIA held that Rojas "is subject to mandatory detention
pursuant to section [1226(c)(1) ], despite the fact that he was
not taken into Service custody immediately upon his release from
state custody."  Matter of Rojas, 23 I. & N. Dec. at 127.

Board member Lory Diana Rosenberg wrote a dissenting opinion
in which six board members joined.  Board member Rosenberg
opined:

> The word " 'when' [is defined] as 'just after
> the moment that.'" Alikhani v. Fasano, 70
> F.Supp.2d 1124, 1130 (S.D.Cal. 1999) (quoting

> Webster's Third New International Dictionary
> 2602 (3d ed. 1976). Therefore, as one court
> noted, the clear language of the statute
> requires that "the mandatory detention of
> aliens 'when' they are released requires that
> they be detained at the time of release."
> Alikhani v. Fasano, supra, at 1130; see also
> Velasquez v. Reno, 37 F.Supp.2d 663, 672
> (D.N.J. 1999) ("This court cannot simply
> ignore the plain language of the statute which
> provides that an alien is to be taken into
> custody 'when the alien is released.' "). As
> another court noted, "Congress could have
> required custody 'regardless of when the alien
> is released' or 'at any time after the alien
> is released,'" but did not do so. Alwaday v.
> Beebe, 43 F.Supp.2d 1130, 1133 (D.Or.
> 1999).... These courts have concluded
> uniformly that "[t]he plain meaning of this
> language is that it applies immediately after
> release from incarceration, not to aliens
> released many year [s] earlier."
> Pastor-Camarena v. Smith, supra, at 1417-18.

Matter of Rojas, 23 I. & N. Dec. at 132-33 (Rosenberg,

dissenting).

## 2.  Chevron

If "Congress has directly spoken to the precise question at

issue," a court and an agency "must give effect to the

unambiguously expressed intent of Congress." Chevron, 467 U.S.

at 842-43. In the immigration context, "[t]he judiciary is the

final authority on issues of statutory construction and must

reject administrative constructions which are contrary to clear

congressional intent. If a court, employing traditional tools of

statutory construction, ascertains that Congress had an intention

on the precise question at issue, that intention is the law and

11

must be given effect." INS v. Cardoza-Fonseca, 480 U.S. 421,
447-48, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (quoting Chevron,
467 U.S. at 843 n. 9). Deference to an agency's interpretation
of a statute "is called for only when the devices of judicial
construction have been tried and found to yield no clear sense of
congressional intent." Gen. Dynamics Land Sys., Inc. v. Cline,
540 U.S. 581, 124 S.Ct. 1236, 157 L.Ed.2d 1094, (2004).

In order to sustain the holding of Matter of Rojas, one
would have to find that Congress's command that the Attorney
General "shall take into custody any alien [specified in this
section], when the alien is released," does not mean what it
says, but instead commands that the Attorney General "shall take
into custody any alien [specified in this section], any time
after the alien is released." Rather than taking the plain
meaning of the statute, the government has re-written the
statute. For example, what does it mean if a court orders that a
defendant shall serve a term of supervised release when the
defendant is released from incarceration? If this Court were to
accept the BIA's reading of the word "when," then the supervised
release could start two years after the defendant was released.
The command that "the Attorney General shall take into custody
any alien who [specified in this section] when the alien is
released" means just what it says, i.e ., the Attorney General
shall take the alien into custody when the alien is released.

12

Because taking the alien into custody approximately a decade after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute.

This Court's reading of § 1226(c) is shared by the majority of federal district courts. See, e.g., Beckford v. Aviles, 2011 WL 3515933 (D.N.J. Aug.9, 2011); Sylvain v. Holder, 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) ("Respondents also argue that the statute is ambiguous because it is plausible that the word 'when' means 'after,' and, in that case, the statute commands that the government 'shall take the alien into custody after the alien is released.' This Court rejects the argument that 'when' means 'after.' "); Louisaire v. Muller, 758 F.Supp.2d 229, 236 (S.D.N.Y. 2010) ( "Matter of Rojas, however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) immediately upon their release from criminal sentences for those same offenses, even if they are still serving part of their sentence out in the community, under 'parole, supervised release, or probation' "); Burns v. Cicchi, 702 F.Supp.2d 281 (D.N.J. 2010) (holding that § 1226(c) does not apply where alien was taken into immigration custody more than 15 years after release from incarceration for

13

covered offense); Dang v. Lowe, 2010 WL 2044634 (M.D.Pa. May 20, 2010) (holding that § 1226(c)(1) does not apply where alien was not taken into immigration custody until 10 years after release from incarceration for an enumerated offense); Khodr v. Adduci, 697 F.Supp.2d 774, 774-75 (E.D.Mich. 2010) ("Because the Court finds that the statute at issue clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in Matter of Rojas" ); Scarlett v. DHS, 632 F.Supp.2d 214, 219 (W.D.N.Y. 2009) ("the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges"). But see Diaz v. Muller, 2011 WL 3422856 (D.N.J. Aug. 04, 2011) (finding "when released" to be ambiguous); Gomez v. Napolitano, 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (same); Sulayao v. Shanahan, 2009 WL 3003199 (S.D.N.Y. Sept. 15, 2009) (same); Espinoza-Loor v. Holder, 2012 WL 2951642 (D.N.J. July 2, 2012); Desrosiers v. Hendricks, Civ. No. 11-4643(FSH) (D.N.J. Dec. 30, 2011); Hosh v. Lucero, 680 F.3d 375, 380 (4th Cir. 2012).

In addition, this Court's reading of § 1226(c) is consistent with the First Circuit's reading of the statute in Saysana v. Gillen, 590 F.3d 7 (1st Cir. 2009). In that case, Massachusetts

14

released Mr. Saysana in 1991 from a five-year sentence for a 1990

(removable) conviction for indecent assault and battery; in 2007

DHS took him into custody under 8 U.S.C. § 1226(c)(1) and

initiated removal proceedings charging that the 1990 conviction

qualified as an aggravated felony rendering him removable

pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  See Saysana, 590 F.3d

at 9.  In a precedent decision, Matter of Saysana, 24 I. & N.

Dec. 602 (BIA 2008), the BIA held that Saysana was covered by the

"when the alien is released" language of § 1226(c) because he was

released from state custody on a dismissed charge after October

8, 1998.  The First Circuit explained the BIA's decision as

follows:

> [T]he Board concluded that the mandatory
> detention provision of 8 U.S.C. § 1226(c)
> applied to any alien with a qualifying
> conviction who was 'released' from any
> criminal custody after the effective date of
> the Illegal Immigration Reform and Immigrant
> Responsibility Act ('IIRIRA') ..., here
> October 8, 1998 ....  In the Board's view,
> because Mr. Saysana had been released from
> state custody in 2005, he was subject to the
> mandatory detention requirement, even though
> the charge that formed the basis for his 2005
> arrest ... was not the crime that formed the
> basis for his removal proceedings.

Saysana, 590 F.3d at 9.

The First Circuit held that, because the plain meaning of §

1226(c) was contrary to the BIA's reading of the statute, Chevron

deference was not permissible.

15

In our view, the natural reading of the
statutory provision from top to bottom makes
clear that the congressional requirement of
mandatory detention is addressed to the
situation of an alien who is released from
custody for one of the enumerated offenses.
The statutory language embodies the judgment
of Congress that such an individual should not
be returned to the community pending
disposition of his removal proceedings. Both
the language and the structure of the
statutory provision state this mandate in a
clear and straightforward manner. As explained
... in Oscar v. Gillen, 595 F.Supp.2d 166[,
170] (D.Mass. 2009) (Tauro, J.):

The "when released" provision immediately
follows the list of enumerated offenses,
indicating that the former modifies the
latter. Additionally, § 1226(c) provides that
the alien shall be detained upon release
regardless of whether he is subsequently
arrested for the "same offense," reinforcing
the notion that the entire clause applies to
the list of enumerated offenses immediately
preceding it.

Saysana, 590 F.3d at 13-14.

This Court finds that Congress clearly intended to give the

Attorney General the authority of mandatory detention under §

1226(c)(1) only if the government takes the alien into custody

immediately when the alien is released from custody resulting

from the removable offense enumerated in § 1226(c).  See, e.g.,

Matter of Rojas, 23 I. & N. Dec. at 131 ("The legislative mandate

to detain is limited to those aliens who are taken into

immigration custody when released from criminal incarceration"

for an offense enumerated in § 1226(c)(1)) (Rosenberg,

dissenting). Because the plain language of the statute commands that an alien is to be taken into custody "when the alien is released," this Court may not defer to the BIA's re-writing of the statute. Because the Attorney General did not take Petitioner into custody when he was released from incarceration in 2000, but allowed him to live in the community for approximately a decade before taking him into custody in 2011, Petitioner is not subject to the mandatory detention exception in § 1226(c)(1). Instead, Petitioner's pre-removal-period detention is governed by 8 U.S.C. § 1226(a), which authorizes the Immigration Judge to release him on bond, if the Immigration Judge finds that Petitioner is neither a flight risk nor a danger to the community.

## III. CONCLUSION

For the reasons set forth above, this Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community, within 10 days of the date of the entry of the Order accompanying this Opinion.

Dated: 10/4/12

DENNIS M. CAVANAUGH
United States District Judge

17